## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO AT CLEVELAND

In re:                                    CASE NO. 16-16426-jps

DERRICK A. WILSON                         CHAPTER 7

                          Debtor.         JUDGE Jessica E Price Smith

                                          MOTION OF WILMINGTON SAVINGS FUND
                                          SOCIETY, FSB, AS TRUSTEE OF STANWICH
                                          MORTGAGE LOAN TRUST A FOR RELIEF
                                          FROM STAY AND ABANDONMENT

                                          440 EAST 143RD STREET, CLEVELAND, OH
                                          44110

　　　　Wilmington Savings Fund Society, FSB, as trustee of Stanwich Mortgage Loan Trust A,

(the "Movant") moves this Court, under §§ 361, 362, 363 and other sections of Title 11 of the

United States Code, and under Federal Rules of Bankruptcy Procedure 4001 and 6007, and under

Local Bankruptcy Rule 4001-1 for an order conditioning, modifying or dissolving the automatic

stay imposed by Bankruptcy Code § 362 and for abandonment of property under Bankruptcy

Code § 554.

### **MEMORANDUM IN SUPPORT**

1.　　　　The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a

core proceeding under 28 U.S.C. § 157(b)(2).  The venue of this case and this Motion is proper

under 28 U.S.C. §§ 1408 and 1409.

2.　　　　On December 21, 2009, the Debtor obtained a loan from Mortgage Now, Inc. in the

amount of $93,279.00. Such loan was evidenced by a promissory note dated December 21, 2009

(the "Note"), a copy of which is attached as **Exhibit A.**

3.　　　　Carrington Mortgage Services, LLC services the loan on the Property referenced in this

Motion. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent, has possession of the promissory note. Movant will enforce the promissory note as transferee in possession. Movant is the original mortgagee or beneficiary or the assignee of the Mortgage.

4.      To secure payment of the Note and performance of the other terms contained in it, the Debtor executed a Security Agreement  in favor of Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for Mortgage Now, Inc. dated December 21, 2009 (the "Security Agreement").  The Security Agreement granted a lien on the real property (The "Collateral") owned by the Debtor, Derrick Wilson,  located at **440 East 143rd Street, Cleveland, OH 44110** and more fully described in the Security Agreement (check one):

> [X]      attached as **Exhibit B**;
>           OR
> [ ]      contained in the Note, attached as Exhibit A.

5.      The lien created by the Security Agreement was duly perfected by (check all that apply):

> [X]      Filing of the Security Agreement in the office of the Cuyahoga County Recorder on December 23, 2009.
> [ ]      Filing of the UCC-1 Financing Statement in the office of _____ on _____ (date)
> [ ]      Notation of the lien on the Certificate of Title.
> [ ]      Other (state with particularity)_____.

A copy of the Security Agreement, UCC-1 Financing Statement, Certificate of Title or other document, as applicable, is attached as Exhibit B.  Based on the Debtor's Voluntary Petition the lien is the first lien on the Collateral.

6.     The entity in possession of the original Note as of the date of this motion is Wilmington

Savings Fund Society, FSB, as trustee of Stanwich Mortgage Loan Trust A.

7.     The entity servicing the loan is:  Carrington Mortgage Services, LLC.

8.     The Note was transferred, as evidenced by the following:

a)  If the Collateral is real estate:

   i.  Under Uniform Commercial Code § 3-203(a) as applicable under state law in
       effect where the property is located, from the original lender:

          [] N/A.

          OR

          [X] By endorsement on the Note from Mortgage Now, Inc., payable to
          U.S. Bank

          AND

          [X] By blank endorsement on the Note executed by U.S. Bank

          OR

          By allonge attached to the Note, payable to:

          _____.

          [] By blank allonge, attached to the Note.

          OR

          [ ] The Note is not endorsed to the Movant, or is not endorsed in blank
          with an allegation that the Movant is in possession of the original Note.
          The factual and legal basis upon which the Movant is entitled to bring this
          motion is (explain with particularity and attach supporting documentation:

             _____

             _____

             _____

          OR

          [ ] By endorsement on the Note or by allonge attached to the Note, through
          a power of attorney.  If this box is checked, a copy of the power of attorney
          is attached as Exhibit ____.  Explain why it provides Movant the authority
          to endorse the Note:

             _____

             _____

    ii.  Under Uniform Commercial Code § 3-203(a) as applicable under state law in effect where the property is located, from <the first transferree> to _____.  ADD ADDITIONAL TRANSFER SECTIONS AS APPROPRIATE.  THE LAST TRANSFERREE MUST BE  THE MOVANT.

    iii.  A Court has already determined that Movant has the ability to enforce the Note with a judgment dated <INSERT DATE OF JUDGMENT> in <INSERT NAME OF COURT>.  A copy of the judgment is attached as Exhibit _____.

    iv.  Other (explain): _____

b)  If the Collateral is not real estate (check one):

      [X] N/A.

      OR

      [ ] From the original lender to <FIRST TRANSFEREE> by <STATE METHOD OR DOCUMENT EFFECTING TRANSFER> [ADD ADDITIONAL TRANSFER SECTIONS AS APPROPRIATE.  THE LAST TRANSFEREE MUST BE THE MOVANT.]

9.    The Security Agreement was transferred as follows:

      [ ] N/A.

      OR

      [X] From the original lender, mortgagee, or mortgagee's nominee on November 27, 2012 to U.S. Bank National Association.  The transfer is evidenced by the Assignment of Mortgage attached to this Motion as **Exhibit C**.

      AND

      [X] From U.S. Bank National Association on June 30, 2016 to Secretary of Housing and Urban Development.  The transfer is evidenced by the Assignment of Mortgage attached to this Motion as **Exhibit D**.

      AND

> [X] From Secretary of Housing and Urban Development on August 17,
> 2016 to Wilmington Savings and Fund Society, FSB, as Trustee for
> Stanwich Mortgage Loan Trust.  The transfer is evidenced by the
> Assignment of Mortgage attached to this Motion as **Exhibit E**.

10.  The value of the Collateral is $77,100.00 (Parcel No. 112-19-029 value is $74,400.00 and Parcel No. 112-19-030 value is $2,700.00).  This valuation is based on the Cuyahoga County Auditor attached as **Exhibit F**.

11.  As of January 3, 2017, there is currently due and owing on the Note the outstanding principal balance of $89,621.12, plus interest accruing thereon at the rate of 6.00% per annum [$14.73 per day] from April 1, 2012, as described in more detail on the worksheet.  The total provided in this paragraph cannot be relied upon as a payoff quotation.

12.  The amount due and owing on the Note as set forth in paragraph 10 DOES NOT include a credit for the sum held in a suspense account by the Movant.  The amount of the credit is 0.00.

13.  Other parties known to have an interest in the Collateral besides the debtor, the Movant, and the trustee are (check all that apply):

> [X] N/A.
>
> [ ] The Cuyahoga County Treasurer, for real estate taxes in the amount of
> _____.
>
> [ ] <CO-OWNERS, IF APPLICABLE, STATE NAME>.
>
> [ ] <ANY OTHER PARTY HOLDING A LIEN, IF APPLICABLE, IN
> THE AMOUNT OF _____ [ADD ADDITIONAL PARTIES AS
> APPROPRIATE]>.

14.  The Movant is entitled to relief from the automatic stay under Bankruptcy Code § 362(d) for these reason(s) (check all that apply):

[ ] Debtor has failed to provide adequate protection for the lien held by the Movant for these reasons (explain):_____.

[ ] Debtor has failed to keep the Collateral insured as required by the Security Agreement.

[ ] Debtor has failed to keep current the real estate taxes owed on the Collateral.

[X] Debtor has failed to make periodic payments to Movant for the months of 05/01/2012 through 01/01/2017, which unpaid payments are in the aggregate amount of $46,413.96 through 01/03/2017. The total provided in this paragraph cannot be relied upon as a reinstatement quotation.

[X ] Debtor has no equity in the Collateral, because Collateral is valued at $77,100.00, and including the Movant's lien, there are liens in an aggregate amount of $136,868.73 on the Collateral.

[ ] Other cause (set forth with specificity): _____.

15.     Movant has completed the worksheet, attached as **Exhibit G**.

16.     Movant is entitled to an order directing the trustee to abandon the Collateral under 11

U.S.C. § 554(b) for these reasons (check all that apply):

[ ] The collateral is burdensome to the estate because: _____

_____

[X] The Collateral is of inconsequential value and benefit to the estate because upon liquidation of the Collateral no proceeds will remain for the benefit of the estate.

WHEREFORE, Movant prays for an Order from the Court:

a)  granting Movant relief from the automatic stay of Bankruptcy Code § 362 to permit Movant to proceed under applicable nonbankruptcy law; AND

b)  authorizing and directing the Chapter 7 Trustee to abandon the Collateral under Bankruptcy Code § 554.

Respectfully Submitted,

/s/ STEVEN H. PATTERSON
_____
Steven H. Patterson (0073452)
Attorney for Movant
Reisenfeld & Associates, LPA-LLC
3962 Red Bank Road
Cincinnati, OH 45227
voice: (513) 322-7000
facsimile: (513) 322-7099
e-mail: ohbk@rslegal.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 11th of January, 2017, a true and correct copy of Wilmington Savings Fund Society, FSB, as trustee of Stanwich Mortgage Loan Trust A's Motion for Relief from Stay and Abandonment was served:

Via the Court's electronic case filing system on these entities and individuals who are listed on the Court's Electronic Mail Notice List:

        Walter V. Landow, Debtor`s Counsel
        landowlaw@att.net
        Via ECF Mail

        Alan J Treinish, Bankruptcy Trustee
        alan@treinishlpa.com
        Via ECF  Mail

        U.S. Trustee
        (Registered address)@usdoj.gov
        Via ECF Mail

And by Regular U.S. Mail, postage prepaid on:

        Derrick A. Wilson, Debtor
        440 East 143rd Street
        Cleveland, OH 44110

                        /s/ STEVEN H. PATTERSON

                        Steven H. Patterson



**EXHIBIT A**

Multistate



# NOTE

December 21, 2009          **CLEVELAND, OHIO**

440 EAST 143RD STREET
CLEVELAND, OHIO 44110
(Property Address)

**1. PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns.
"Lender" means **MORTGAGE NOW, INC, CORPORATION** and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of **NINETY-THREE THOUSAND TWO HUNDRED SEVENTY-NINE AND NO/100** Dollars (U.S. **$93,279.00**), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **SIX** percent (**6.000%**) per year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4. MANNER OF PAYMENT**

    **(A) Time**

Borrower shall make a payment of principal and interest to Lender on the 1st day of each month beginning on **February 1, 2010**. Any principal and interest remaining on the **1st day of January, 2040**, will be due on that date, which is called the "Maturity Date."

    **(B) Place**

Payment shall be made at

               **MORTGAGE NOW, INC**
               **750 WEST RESOURCE DRIVE SUITE 300**
               **BROOKLYN HEIGHTS, OHIO 44131**
                      or at such place as Lender may designate in writing by notice to Borrower.

    **(C) Amount**

Each monthly payment of principal and interest will be in the amount of U.S. **$559.25**.
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

---

FHA Multistate Fixed Rate Note - (10/95)
VMP-1R (0210).02
10S, Inc.

               Page 1 of 3

                             Borrower(s) Initials _____

**EXHIBIT A**

**(D) Allonge to this Note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. (Check applicable box.)

☐ Graduated Payment Allonge ☐ Growing Equity Allonge ☐ Other (specify)

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of **FIFTEEN** calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR** percent (4.000%) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

FHA Multistate Fixed Rate Note – (10/95)
VMP-1R (9210).02
IOS, Inc.

Page 2 of 3

Borrower(s) Initials DJW

16-16426-jps   Doc 13   FILED 01/11/17   ENTERED 01/11/17 16:49:17   Page 10 of 34

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)     _____ (Seal)
DERRICK WILSON              -Borrower                                    -Borrower

PAY TO THE ORDER OF
U.S. Bank
WITHOUT RECOURSE
BY _____
VICE PRESIDENT    LAURA MANN
MORTGAGE NOW, INC.

Pay to the order of

Without Recourse
U.S. Bank N.A.

Teresa Bulver
Vice President



WHEN RECORDED, MAIL TO:
MORTGAGE NOW, INC
750 WEST RESOURCE DRIVE SUITE 300
BROOKLYN HEIGHTS, OHIO 44131

[Space Above This Line For Recording Data]

State of Ohio

## OPEN-END MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on December 21, 2009.
The Mortgagor is DERRICK WILSON, AN UNMARRIED WOMAN, ("Borrower"),
whose current mailing address is 12700 FAIRHILL #208, CLEVELAND, OHIO 44120

This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. (MERS), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

MORTGAGE NOW, INC, CORPORATION, ("Lender")
is organized and existing under the laws of OHIO,
and has an address of 750 WEST RESOURCE DRIVE SUITE 300, BROOKLYN HEIGHTS, OHIO 44131.

Borrower owes Lender the principal sum of NINETY-THREE THOUSAND TWO HUNDRED SEVENTY-NINE AND NO/100 Dollars (U.S. $93,279.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on January 1, 2040. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in CUYAHOGA County, Ohio:

**SEE ATTACHED EXHIBIT "A"**

Parcel ID Number: 112-19-029 & 112-19-030

which has the address of 440 EAST 143RD STREET
CLEVELAND, OHIO 44110                                    ("Property Address");

FHA Ohio Open-End Mortgage with MERS – 4/96                              Amended 1/02
Page 1 of 7
IDS, Inc.                                                    Borrower(s) Initials _____ _____

**EXHIBIT B**

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

**First,** to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

16-16426-jps    Doc 13    FILED 01/11/17    ENTERED 01/11/17 16:49:17    Page 13 of 34

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

---

16-16426-jps   Doc 13   FILED 01/11/17   ENTERED 01/11/17 16:49:17   Page 15 of 34

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or

---

regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety, or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Advances to Protect Security.** This Security Instrument shall secure the unpaid balance of advances made by Lender, with respect to the Property, for the payment of taxes, assessments, insurance premiums and costs incurred for the protection of the Property.

21. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider ☐ Graduated Payment Rider ☐ Adjustable Rate Rider
☐ Planned Unit Development Rider ☐ Growing Equity Rider ☐ Other:

---

16-16426-jps   Doc 13   FILED 01/11/17   ENTERED 01/11/17 16:49:17   Page 17 of 34

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ -Witness          _____ -Witness

_____ (Seal)          _____ (Seal)
DERRICK WILSON                 -Borrower                                       -Borrower

STATE OF OHIO, Cuyahoga County ss:

The foregoing instrument was acknowledged before me this 21st day of December 2010 by DERRICK WILSON .
Witness my hand and official seal.

My Commission Expires: _____

(Seal)

This instrument was prepared by:
MORTGAGE NOW, INC
750 WEST RESOURCE DRIVE SUITE 300
BROOKLYN HEIGHTS, OHIO 44131

HEIDI A. MEEHAN
NOTARY PUBLIC
STATE OF OHIO
Recorded in
Cuyahoga County
My Comm. Exp. 7/22/14

FHA Ohio Open-End Mortgage with MERS – 4/96          Amended 1/02
Page 7 of 7
IDS, Inc.

Exhibit "A"

Situated in the City of Cleveland, County of Cuyahoga and
the state of Ohio:
And known as being Sublot Nos. 38 and 39 in August Wendorff's
allotment of part of Original Euclid Township Tract No. 16, as
shown by the recorded plat in Volume 36 of Maps, Page 27 of
Cuyahoga County Records, and together forming a parcel of land
80 feet front and on the Westerly side of East 143rd Street and
extending back 135.58 feet on the Northerly line, 136.54 feet
on the Southerly line, and having a rear line of 80.01 feet as appears
by said plat be the same more or less, but subject to all legal highways.

PPN: 112-19-029
       112-19-030
AKA
440 East 143rd Street
Cleveland, OH 44110

**OHIO HOUSING FINANCE AGENCY**
**SINGLE FAMILY MORTGAGE REVENUE BOND PROGRAM**

**ADDENDUM TO MORTGAGE**

As long as this mortgage is held as security for the Ohio Housing Finance Agency, the Lender ("Mortgagee") may declare all sums secured by this mortgage to be immediately due and payable if:

(a)  All or part of the property is sold or otherwise transferred (other than by devise, descent or operation of law) by Borrower ("Mortgagor") to a purchaser or other transferee:

  i)  who cannot reasonably be expected to occupy the property as a principal residence within a reasonable time after the sale or transfer, all as provided in Section 143(a)(3) of the Internal Revenue Code; or

  ii)  who has had a present ownership interest in a principal residence during any part of the three-year period ending on the date of the sale or transfer, all as provided in Section 143(d)(1) of the Internal Revenue Code; or

  iii)  at an acquisition cost which is greater than the then current federally designated average area purchase price for existing housing, all as provided in Section 143(e) of the Internal Revenue Code or in any subsequent amendments thereto; or

  iv)  who has an income in excess of the then current income limits, all as provided in Section 143(f) of the Internal Revenue Code or in any subsequent amendments thereto; or

(b)  Borrower ("Mortgagor") omits or misrepresents a material fact in an application for this mortgage.

(c)  The Borrower ("Mortgagor") subsequently leases the property (except upon prior written approval of the Ohio Housing Finance Agency in extreme hardship circumstances).

IN WITNESS WHEREOF, the Borrower ("Mortgagor") has executed this Addendum on this ₒ1 day _____ (month) of ____ (year).

Signature _____        Signature _____

Printed  DERRICK A. WILSON        Printed _____

STATE OF OHIO

COUNTY OF _____

On this ____ day of _____ (month) ____ (year), before me, a Notary Public within and for said County and State, personally appeared  Derrick A. Wilson  to me known to be the person(s) described in and who, being by me first duly sworn, executed the foregoing Addendum to Mortgage, and acknowledged, deposed and said that he/she/they executed the same as _____ act and deed and stated that the information and certifications contained therein are true and correct.

**HEIDI A. MEEHAN**
**NOTARY PUBLIC**
**STATE OF OHIO**
**Recorded In**
**Cuyahoga County**
**My Comm. Exp. 7/22/14**

_____
Notary Public

My Commission Expires: _____
This instrument was prepared by: _____
Address: _____

Revised 10/06

## TAX EXEMPT FINANCING RIDER TO SECURITY INSTRUMENT

THIS TAX-EXEMPT FINANCING RIDER is made this __21__ day of __December__ 2007, and is incorporated into and shall be deemed to amend and supplement the Mortgage or Security Deed ("Security Instrument") of the same date given by the undersigned ("Mortgagor") to secure Mortgagor's Note ("Note") to _____ MORTGAGE NOW, INC. _____ ("Lender") of the same date and covering the property described in the Security Instrument and located at :

__440 E. 143rd St. Cleveland, OH__

(Property Address)

In addition to the covenants and agreements made in the Security Instrument, Mortgagor and Lender further covenant and agree as follows:

Lender, or such of its successors or assigns as may by separate instrument assume responsibility for assuring compliance by the Mortgagor with the provisions of this Tax-Exempt Financing Rider, may require immediate payment in full of all sums secured by this Security Instrument if the loan is not paid in full and:

(a) all or part of the property is sold or otherwise transferred by Mortgagor to a purchaser or other transferee:

(i) who cannot reasonably be expected to occupy the property as a principal residence within a reasonable time after the sale or transfer, all as provided in Sections 143 (c) and (i) (2) of the Internal Revenue Code; or

(ii) who has had a present ownership interest in a principal residence during any part of the three-year period ending on the date of the sale or transfer, all as provided in Sections 143 (d) and (i) (2) of the Internal Revenue Code (except that "100 percent" shall be substituted for "95 percent or more" where the latter appears in Section 143 (d) (1); or

(iii) at an acquisition cost which is greater than 90 percent of the average area purchase price (greater than 110 percent for targeted area residences), all as provided in Section 143(e) and (i) (2) of the Internal Revenue Code; or

(iv) who has a gross family income in excess of the applicable percentage of applicable median family income, as provided in Section 143 (f) and (i) (2) of the Internal Revenue Code; or

(b) Mortgagor fails to occupy the property described in the mortgage without the prior written consent of the Mortgagee or its successors or assigns described at the beginning of this addendum; or

(c) Mortgagor omits or misrepresents a fact which is material with respect to the provisions of Section 143 of the Internal Revenue Code of 1986 in an application for this mortgage.

References are to the Internal Revenue Code as amended and in effect on the date of issuance of the Bonds, the proceeds of which will be used to finance the purchase of the Security Instrument and are deemed to include the implementing regulations.

DATE: __12-21-07__

SIGNATURE OF MORTGAGOR __(signature)__

SIGNATURE OF MORTGAGOR _____

Revised 10/06



440 E. 143rd St., Cleveland, OH 44110

## OHIO

## ASSIGNMENT OF MORTGAGE

KNOWN ALL MEN BY THESE PRESENTS, that the undersigned Mortgage Electronic Registration Systems, Inc., as nominee for Mortgage Now, Inc., its successors and assigns, whose address is 1901 E. Voorhees St, Suite C, Danville, IL 61834 ("Assignor") does hereby assign to U.S. Bank National Association whose address is c/o US Bank Home Mortgage , 4801 Frederica Street, Owensboro, KY 42301 ("Assignee") all of its interest in that certain mortgage duly recorded in the Office of the County Recorder of Cuyahoga County, State of Ohio, as follows:

Mortgagor: Derrick A. Wilson
Mortgagee: Mortgage Electronic Registration Systems, Inc., as nominee for Mortgage Now, Inc.
Document Date: December 21, 2009
Date Recorded: December 23, 2009
Document/Instrument/Entry Number: 200912230435
Original Amount of Mortgage: $93,279.00
Property Address: 440 E. 143rd St., Cleveland, OH 44110
MERS MIN No.:
MERS Phone No.:
Parcel ID: 112-19-029 & 112-19-030
Property Described as follows:

Situated in the City of Cleveland, County of Cuyahoga, and State of Ohio:
And known as being Sublot Nos. 38 and 29 in August Wendorff's Allotment of part of Original Euclid Township Tract No. 16, as shown by the recorded plat in Volume 36 of Maps, Page 27 of Cuyahoga County Records, and together forming a parcel of land 80 feet front on the Westerly side of East 143rd Street and extending back 135.58 feet on the Northerly line 136.54 feet on the Southerly line, and having a rear line of 80.01 feet as appears by said plat, be the same more or less, but subject to all legal highways.

This Assignment is made without recourse, representation or warranty.



### EXHIBIT C

440 E. 143rd St., Cleveland, OH 44110

Dated: _November 27_ 2012

Mortgage Electronic Registration Systems, Inc., as nominee for Mortgage Now, Inc., its successors and assigns

By: _Paula Laslie_
Name: Paula Laslie
Title: Assistant Secretary

STATE OF KENTUCKY
COUNTY OF DAVIESS

On _Nov 27 2012_, before me, _Jessica Ford_, Notary Public, personally appeared Paula Laslie, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY that the foregoing paragraph is true and correct.

Witness my hand and official seal.

_____
Notary signature

My Commission Expires: _Nov 9 2014_

OFFICIAL SEAL
JESSICA FORD
NOTARY PUBLIC - KENTUCKY
STATE-AT-LARGE
My Comm. Expires Nov 9, 2014
COMM. # 431553

PREPARED BY and RETURN TO:
Matthew C. Gladwell (0075591)
Carrie L. Rouse (0083281)
Ryan F. Hemmerle (0079721)
Robert A. Wood (0031620)
Reisenfeld & Associates, LPA LLC
3962 Red Bank Road
Cincinnati, OH 45227



**ASSIGNMENT OF OPEN-END MORTGAGE
AND OTHER LOAN DOCUMENTS**

U.S. BANK NATIONAL ASSOCIATION whose address is 4801 Frederica Street, Owensboro, KY 42301, (herein "Assignor"), in consideration of Ten Dollars ($10.00) and other good and valuable consideration received by Assignor, hereby assigns, transfers, sets over and conveys to SECRETARY OF HOUSING AND URBAN DEVELOPMENT, and his/her successors and assigns (herein "Assignee"), whose address is 451 7TH Street S.W., Washington, D.C. 20410, without recourse, the following:

That certain real estate OPEN-END MORTGAGE executed by DERRICK A. WILSON, AN UNMARRIED MAN, to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR MORTGAGE NOW, INC, CORPORATION ITS SUCCESSORS AND ASSIGNS, dated 12/21/2009, in the amount of $93,279.00, and recorded on 12/23/2009 as Document number: 200912230435, among the land records of CUYAHOGA County, OH, as amended or modified (the "Mortgage"), which Mortgage secures that certain promissory note dated 12/21/2009 (the "Note"); and

such other documents, agreements, instruments and other collateral that evidence, secure or otherwise relate to Assignor's right, title or interest in and to the Mortgage and/or the Note, including without limitation the title insurance policies and hazard insurance policies that might presently be in effect.

PROPERTY ADDRESS: 440E 143RD STREET, CLEVELAND, OH 44110

PAGE TWO

TO HAVE AND TO HOLD unto Assignee and its successors and assigns forever.

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered by its duly authorized officer as of 6/30/2016.

U.S. BANK NATIONAL ASSOCIATION

Debra R. Wiese, Vice President

STATE OF WISCONSIN }
COUNTY OF MILWAUKEE } ss.

This instrument was acknowledged before me on 6/30/2016, by Debra R. Wiese, as Vice President, of U.S. BANK NATIONAL ASSOCIATION.

(Notary Name): Andrew Lossmann
(Title or Rank): Account Services Representative
My commission expires: 11/22/2019

```
ANDREW LOSSMANN
Notary Public
State of Wisconsin
```

This document prepared by:
Andrew Lossmann
U.S. Bank National Association

Record and Return to:
Carrington Mortgage Services
Attention: Margarita Deuning
1600 South Douglass Road, Suite 200-A
Anaheim, CA 92806

U.S. Bank National Association Lo▮▮▮▮▮▮
Carrington Mortgage Services Loar▮▮▮▮▮



## ASSIGNMENT OF OPEN-END MORTGAGE
## AND OTHER LOAN DOCUMENTS

U.S. Bank Loan # █████████████
Carrington Mortg █████████████

SECRETARY OF HOUSING AND URBAN DEVELOPMENT, and his/her successors and assigns whose address is 451 7TH Street S.W., Washington, D.C. 20410, (herein "Assignor"), in consideration of Ten Dollars ($10.00) and other good and valuable consideration received by Assignor, hereby assigns, transfers, sets over and conveys to WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST A (herein "Assignee"), whose address is 1600 South Douglass Road, Suite 200-A, Anaheim, CA 92806, without recourse, the following:

That certain real estate OPEN-END MORTGAGE executed by DERRICK A. WILSON, AN UNMARRIED MAN, to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR MORTGAGE NOW, INC, CORPORATION ITS SUCCESSORS AND ASSIGNS, dated 12/21/2009, in the amount of $93,279.00, and recorded on 12/23/2009 as Document number: 200912230435, among the land records of CUYAHOGA County, OH, as amended or modified (the "Mortgage"), which Mortgage secures that certain promissory note dated 12/21/2009 (the "Note"); and

such other documents, agreements, instruments and other collateral that evidence, secure or otherwise relate to Assignor's right, title or interest in and to the Mortgage and/or the Note, including without limitation the title insurance policies and hazard insurance policies that might presently be in effect.

PROPERTY ADDRESS:  440E 143RD STREET, CLEVELAND, OH 44110

TO HAVE AND TO HOLD unto Assignee and its successors and assigns forever.

PAGE TWO

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered by its duly authorized officer as of __8-17-2016__ .


SECRETARY OF HOUSING AND URBAN
DEVELOPMENT BY CARRINGTON MORTGAGE
SERVICES, LLC, ITS ATTORNEY IN FACT

_____

_____,
Chris Lechtanski, AVP of Default
for Carrington Mortgage Services, LLC, Attorney in Fact

A notary public or other officer completing this
Certificate verifies only the identity of the
individual who signed the document to which this
certificate is attached, and not the truthfulness,
accuracy, or validity of that document.

STATE OF CALIFORNIA        }
COUNTY OF __Orange__       } ss.
On __AUG 17 2016__ , before me, W. Solano, Notary Public _____,
personally appeared, Chris Lechtanski _____, who proved
to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and
that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing is true and
correct.

WITNESS my hand and official seal.

_____

(Notary Name): _____
(Title or Rank): _____
My commission expires: _____

W. SOLANO
COMM. # 2071244
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
COMM. EXPIRES JULY 10, 2018

This document prepared by:
Andrew Lossmann
U.S. Bank National Association

Record and Return to:
Carrington Mortgage Services
Attention: Margarita Deuning
1600 South Douglass Road, Suite 200-A
Anaheim, CA 92806


U.S. Bank National Associat
Carrington Mortgage Service

**EXHIBIT F**



| | | |
|---|---|---|
| General Information | Transfer History | Certified Values |
| Land Record | Residential Bldg. Sketch | Taxes |
| Search Page | | |

Field
Definitions

**PARCEL ID**    112-19-029
**OWNERS NAME**    WILSON, DERRICK A.
**ADDRESS**    00440 E 143 ST
**CITY**    CLEVELAND
**ZIP**    44110

**General Information**

| | | | |
|---|---|---|---|
| **OWNER** | WILSON, DERRICK A. | **UNIT NUMBER** | |
| **CLASS** | R | **TAX DISTRICT** | 030 |
| **LAND USE** | 5100 | **OWNER OCCUPIED** | |
| **LAND USE 2** | | **TAX ABATEMENT** | |
| **ROAD TYPE** | PV | **NEIGHBORHOOD** | 01182 |
| **WATER** | MUN | **TOTAL BUILDINGS** | 1 |
| **GAS** | Y | | |
| **SEWER** | SNS | | |
| **ELECTRICITY** | Y | | |

CUYAHOGA COUNTY ASSUMES NO LIABILITY FOR DAMAGES AS A RESULT OF ERRORS, OMISSIONS OR DISCREPANCIES CONTAINED IN THESE PAGES. PROSPECTIVE PURCHASERS SHOULD CONSULT A REAL ESTATE ATTORNEY AND PURCHASE A TITLE INSURANCE POLICY PRIOR TO THE SALE.



| PARCEL ID | 112-19-029 |
|---|---|
| OWNERS NAME | WILSON, DERRICK A. |
| ADDRESS | 440 E 143 St |
| CITY | Cleveland |
| ZIP | 44110 |

**2016 Market Value**

|  | LUC | LAND | BLDG | TOTAL |
|---|---|---|---|---|
| APPRAISED | 5100 | 5,300 | 69,100 | 74,400 |
| NET TAXABLE | 5100 | 5,300 | 69,100 | 74,400 |
| EXEMPT | 0 | 0 | 0 | 0 |
| ABATED | 0 | 0 | 0 | 0 |

TIF Values not available at this time

By state law, the Cuyahoga County Auditor is responsible to see that every parcel of land and the buildings thereon are fairly and uniformly appraised and assessed for tax purposes. The County Auditor maintains a detailed record of the appraisal on each parcel in Cuyahoga County. For further information on tax abatements, please contact your local city hall or the County Auditors Office at 216-443-7100.

## *Real Property Tax Abatements / Incentives*

*Abatements* are tools used by Municipalities to encourage development and to create and preserve employment. In short, Tax Abatement is a temporary reduction of billable value on a parcel. The Tax Incentive Division handles the administration of these finite term exemptions and abatements. Currently over 15,000 parcels within Cuyahoga County receive some form of tax incentive.

To verify Abatement on a specific parcel please view the ?General Information? tab, in Property Information, where there is a field listed with the designation. To view the value of the Abatement, one must view the ?Certified Value? tab within the parcel record.

*Exempt* property which is assessed but not taxed. Generally, properties which are exempt from property taxes because they provide services for the public good, such as schools, churches, and hospitals.

Properties that show an assessed value but do not show value on the charge and payment detail may have abatement or an exemption.

CUYAHOGA COUNTY ASSUMES NO LIABILITY FOR DAMAGES AS A RESULT OF ERRORS, OMISSIONS OR DISCREPANCIES CONTAINED IN THESE PAGES. PROSPECTIVE PURCHASERS SHOULD CONSULT A REAL ESTATE ATTORNEY AND PURCHASE A TITLE INSURANCE POLICY PRIOR TO THE SALE.



| | |
|---|---|
| **PARCEL ID** | 112-19-030 |
| OWNERS NAME | WILSON, DERRICK A. |
| **ADDRESS** | E 143 ST |
| **CITY** | CLEVELAND |
| **ZIP** | 44110 |

Field Definitions

**General Information**

| | | | |
|---|---|---|---|
| **OWNER** | WILSON, DERRICK A. | **UNIT NUMBER** | |
| **CLASS** | R | **TAX DISTRICT** | 030 |
| **LAND USE** | 5000 | **OWNER OCCUPIED** | |
| **LAND USE 2** | | **TAX ABATEMENT** | |
| **ROAD TYPE** | PV | **NEIGHBORHOOD** | 01182 |
| **WATER** | MUN | **TOTAL BUILDINGS** | 0 |
| **GAS** | Y | | |
| **SEWER** | SNS | | |
| **ELECTRICITY** | Y | | |

CUYAHOGA COUNTY ASSUMES NO LIABILITY FOR DAMAGES AS A RESULT OF ERRORS, OMISSIONS OR DISCREPANCIES CONTAINED IN THESE PAGES. PROSPECTIVE PURCHASERS SHOULD CONSULT A REAL ESTATE ATTORNEY AND PURCHASE A TITLE INSURANCE POLICY PRIOR TO THE SALE.



| PARCEL ID | 112-19-030 |
| OWNERS NAME | WILSON, DERRICK A. |
| ADDRESS | E 143 ST |
| CITY | Cleveland |
| ZIP | 44110 |

**2016 Market Value**

| | LUC | LAND | BLDG | TOTAL |
|---|---|---|---|---|
| APPRAISED | 5000 | 2,700 | 0 | 2,700 |
| NET TAXABLE | 5000 | 2,700 | 0 | 2,700 |
| EXEMPT | 0 | 0 | 0 | 0 |
| ABATED | 0 | 0 | 0 | 0 |

TIF Values not available at this time

By state law, the Cuyahoga County Auditor is responsible to see that every parcel of land and the buildings thereon are fairly and uniformly appraised and assessed for tax purposes. The County Auditor maintains a detailed record of the appraisal on each parcel in Cuyahoga County. For further information on tax abatements, please contact your local city hall or the County Auditors Office at 216-443-7100.

## *Real Property Tax Abatements / Incentives*

*Abatements* are tools used by Municipalities to encourage development and to create and preserve employment. In short, Tax Abatement is a temporary reduction of billable value on a parcel. The Tax Incentive Division handles the administration of these finite term exemptions and abatements. Currently over 15,000 parcels within Cuyahoga County receive some form of tax incentive.

To verify Abatement on a specific parcel please view the ?General Information? tab, in Property Information, where there is a field listed with the designation. To view the value of the Abatement, one must view the ?Certified Value? tab within the parcel record.

*Exempt* property which is assessed but not taxed. Generally, properties which are exempt from property taxes because they provide services for the public good, such as schools, churches, and hospitals.

Properties that show an assessed value but do not show value on the charge and payment detail may have abatement or an exemption.

CUYAHOGA COUNTY ASSUMES NO LIABILITY FOR DAMAGES AS A RESULT OF ERRORS, OMISSIONS OR DISCREPANCIES CONTAINED IN THESE PAGES. PROSPECTIVE PURCHASERS SHOULD CONSULT A REAL ESTATE ATTORNEY AND PURCHASE A TITLE INSURANCE POLICY PRIOR TO THE SALE.

# EXHIBIT G

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OHIO AT CLEVELAND**

In Re:                           CASE NO. 16-16426-jps

DERRICK A. WILSON           CHAPTER 7

                 Debtor.     JUDGE Jessica E Price Smith

                           WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF STANWICH MORTGAGE LOAN TRUST A'S RELIEF FROM STAY AND ABANDONMENT WORKSHEET

                           440 EAST 143RD STREET, CLEVELAND, OH 44110

## I.  LOAN DATA

     A.  IDENTIFICATION OF COLLATERAL (check all that apply):

          [X] Real Estate - 440 East 143rd Street, Cleveland, OH 44110

              [X] Principal Residence of Debtor

              [ ] Other

     [ ] Personal Property – Describe.  Include VIN or other identification

     [ ] Other Property – Describe.

     B.  CURRENT VALUE OF COLLATERAL: $77,100.00

     C.  SOURCE OF COLLATERAL VALUATION:  Cuyahoga County Auditor

     D.  ORIGINAL LENDER:  Mortgage Now, Inc, Corporation

     E.  ENTITY ENTITLED TO ENFORCE THE NOTE: Wilmington Savings Fund Society, FSB, as trustee of Stanwich Mortgage Loan Trust A

     F.  CURRENT LOAN SERVICER: Carrington Mortgage Services, LLC

     G.  DATE OF LOAN:  December 21, 2009

     H.  ORIGINAL PRINCIPAL AMOUNT DUE UNDER NOTE:  $93,279.00

     I.  ORIGINAL INTEREST RATE ON NOTE:  6.000%

     J.  CURRENT INTEREST RATE:  6.000%

K.  ORIGINAL MONTHLY PAYMENT AMOUNT (principal and interest only for mortgage loans):  $559.25

L.  CURRENT MONTHLY PAYMENT AMOUNT: $814.28

M.  THE CURRENT MONTHLY PAYMENT AMOUNT LISTED ABOVE:

  [ ] Includes an escrow amount of $_____ for real estate taxes.

  [ ] Includes an escrow amount of $_____ for property insurance.

  [X] Includes an escrow amount of $255.03 for taxes and insurance.

  [ ] Does not include any escrow amount.

N.  DATE LAST PAYMENT RECEIVED: 04/01/2012

O.  AMOUNT OF LAST PAYMENT RECEIVED: $891.00

P.  AMOUNT HELD IN SUSPENSE ACCOUNT: $0.00

Q.  NUMBER OF PAYMENTS PAST DUE:  57

## II.  AMOUNT ALLEGED TO BE DUE AS OF 01/03/2017

|    | Description of Charge | Total Amount of Charges | Number of Charges Incurred | Dates Charges Incurred |
|----|-----------------------|-------------------------|----------------------------|------------------------|
| A. | PRINCIPAL | $89,621.12 | - | - |
| B. | INTEREST 4/1/2012-1/31/2017 | $25,984.24 | - | - |
| C. | TAXES (escrow for taxes and insurance) | $18,807.42 | - | - |
| D. | INSURANCE | See Line C | - | - |
| E. | LATE FEES | | | |
| F. | NON-SUFFICIENT FUNDS FEES | | | |
| G. | PAY-BY-PHONE FEES | | | |
| H. | BROKER PRICE OPINION | | | |
| I. | FORCE-PLACED INSURANCE | | | |
| J. | PROPERTY INSPECTIONS | | | |
| K. | OTHER CHARGES (describe in detail and state contractual basis for recovering the amount from the debtor) | | | |

TOTAL DEBT:                                    $_____134,412.78

LESS AMOUNT HELD IN SUSPENSE:      ($_____0.00)

TOTAL DUE AS OF DATE MOTION IS FILED:          $        134,412.78 *

* This total cannot be relied upon as a payoff quotation

This worksheet was prepared by:


/s/ STEVEN H. PATTERSON

Steven H. Patterson (0073452)
Reisenfeld & Associates, LPA-LLC
3962 Red Bank Road
Cincinnati, OH 45227
voice: (513) 322-7000
facsimile: (513) 322-7099
e-mail: ohbk@rslegal.com